738 So.2d 763 (1998)
Jeannie F. DRISTE, Appellant,
v.
Michael Gerald DRISTE, Appellee.
No. 97-CA-01111 COA.
Court of Appeals of Mississippi.
December 18, 1998.
Rehearing Denied February 23, 1999.
Certiorari Denied May 13, 1999.
*764 L.C. James, William B. Pemberton, II, T. Jackson Lyons, Jackson, Attorneys for Appellant.
John A. Ferrell, Booneville, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
SOUTHWICK, J., for the Court:
¶ 1. Jeannie Driste appeals from a decision of the Alcorn County Chancery Court alleging error in the trial court's failure to award permanent periodic alimony, adequate rehabilitative and lump sum alimony, and failure to divide the marital estate equitably. We agree that the overall alimony award was inadequate based on the evidence. We therefore reverse and remand for further proceedings.

FACTS
¶ 2. Jeannie and Michael Driste were married in 1988 in Madison County, Alabama. In 1997 they were divorced in Alcorn County, Mississippi, on the grounds of irreconcilable differences. During the course of this marriage, both spouses changed employment several times. Mr. *765 Driste twice moved into new jobs, each time increasing his income. His last employment before the divorce caused them to move from Alabama to Mississippi when he took a job for $70,000 per year. At the time of the divorce, Mr. Driste was making over $96,000 per year with this employer. Mrs. Driste was working part time. The couple had no children, but Mrs. Driste has an adult son from a prior marriage.
¶ 3. Mrs. Driste has a high school diploma and attended but did not complete college. Mr. Driste has a bachelor's degree in marketing/management from the University of North Alabama. His current earning capacity substantially exceeds that of his former wife.
¶ 4. Mrs. Driste suffers from two protruding disks in her back and has been under a psychologist's care resulting from the stress of the separation and divorce. She also suffers from headaches though she testified to being in good physical health.
¶ 5. The chancellor did not grant permanent periodic alimony. He ordered $750 per month in rehabilitative periodic alimony for eighteen months, $20,000 in lump sum alimony, and $4,537.50 in attorney's fees. He required Mr. Driste to pay all credit card and other debts of the parties except those incurred by Mrs. Driste after January 24, 1997, to pay $1,500 towards her Magnolia Hospital bill, $600 towards her psychologist's bill, and also to pay her 1/3 of the 1996 federal and state income tax returns which Michael Driste had deposited into his account. The marital home was to be sold with any profits used to satisfy all of the outstanding debts against that property and the remainder to be split evenly between the parties. The chancellor divided the marital personal property almost evenly with Mrs. Driste receiving slightly more than one half in value.

DISCUSSION

ISSUE 1: Need for award of permanent periodic alimony
¶ 6. The chancellor granted no permanent periodic alimony. Such an award is permissible in a divorce based upon irreconcilable differences. Hemsley v. Hemsley, 639 So.2d 909, 912 (Miss.1994). The supreme court has established twelve factors to be considered when a chancellor rules on alimony. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). While these factors help determine whether or not alimony should be granted, they do not instruct us on what type of alimony is optimal. That determination is dependent on the facts of a given case.
¶ 7. The chancellor here did not explain the rejection of permanent periodic alimony. Other forms of alimony were awarded, though Mrs. Driste contends the amounts did not equate to what reasonable permanent alimony would have provided. Among the factors for determining whether to award periodic alimony is fault in causing the divorce, but the chancellor did not allow such evidence because this was an irreconcilable differences divorce. The explicit issue of whether evidence regarding fault may be admitted to assist in determining an award of alimony in such a divorce is one of first impression for this Court.
¶ 8. Allowing evidence of fault in an alimony determination is a factor specifically listed in Armstrong. Id. Nothing in that case indicates such a factor may only be considered in a fault-based divorce. In a very recent case involving a divorce based on irreconcilable differences, the supreme court listed all the Armstrong factors, including fault, as criteria a chancellor should use in determining alimony. Selman v. Selman, 722 So.2d 547 ¶ 31 (Miss.1998). In a divorce based upon irreconcilable differences there is not any spousal fault that underlies the legal determination to grant a divorce. Still, one spouse more than the other can as a matter of factual reality be more blameworthy in leading the couple to the point of agreeing to the need for a divorce. A total rejection of all such evidence is too broad.
*766 ¶ 9. We hold that limited testimony regarding all the Armstrong factors can be introduced even in an uncontested divorce. However, the chancellor should exercise discretion to restrict the evidence such that the determination of relative fault for purposes of awarding alimony does not become the equivalent of trying a contested divorce. The chancellor erred by not allowing Mrs. Driste to put on any evidence that Mr. Driste committed adultery. The fact that both spouses agree to a divorce does not eliminate the consideration of the fault factor in determining alimony.
¶ 10. The chancellor found "no issue as to contribution to the education, training, or other accomplishment bearing on the earning power of the spouse accumulating the assets." Mrs. Driste disputes this, arguing there was significant testimony regarding her sacrifices for Mr. Driste's career. Both parties were making similar amounts of money when they married. Michael Driste already had his college degree. Jeannie Driste claimed she assisted her husband in retaining his employment with one company and that she hosted a party for, and attempted to improve the image of, his current employer. We do not find this evidence alone so great as to overcome the deference afforded a chancellor in making his decision on alimony. "The standard of review of an alimony award, or lack thereof, is that it is within the discretion of the chancellor and should not be reversed unless the chancellor was manifestly in error." Richard v. Richard, 711 So.2d 884, 891 (Miss.1998).
¶ 11. The chancellor stated that he did not have the authority to make Mr. Driste responsible for paying health insurance premiums for Mrs. Driste under Bland v. Bland, 629 So.2d 582 (Miss.1993). We agree with Mrs. Driste that the chancellor misinterpreted Bland. The court stated "[g]enerally, health insurance policies cover a spouse and dependents; however, once a divorce is granted, a former spouse is usually no longer insurable on the other spouse's policy." Id. at 589. That is merely an observation regarding the operation of insurance plans covering employees and their dependents. Nothing in Bland prohibits a chancellor from using his authority to require one ex-spouse to make medical insurance premium payments for the other ex-spouse. A chancellor may not require a person to keep an ex-spouse on a policy when this not allowed. That is not what Mrs. Driste sought.
¶ 12. Mrs. Driste further argues the disparity in education, income, earning capacity, both actual and potential, and career success heavily favor an award of permanent periodic alimony. This situation is not quite comparable to that involved in Armstrong where the wife was "departing a 21 year marriage with primary custodial responsibility for two minor children ... little formal education and meager job experience...." Armstrong, 618 So.2d at 1281. Mrs. Driste is departing an eight year marriage, has meaningful work experience, and no dependent children. Her one son is from a previous marriage and not the legal responsibility of Michael Driste. At the time of the divorce trial her son was twenty-one years old. She is only in her forties, in imperfect but satisfactory health, and there is no particular reason why Mrs. Driste cannot obtain and maintain gainful employment.
¶ 13. There is an overlap between each type of alimony and equitable distribution. We defer ruling on the effect of the legal errors in the chancellor's evaluation of this issue until we have examined the other awards.

ISSUE 2: Inadequate rehabilitative alimony
¶ 14. Mrs. Driste contends that $750 per month for 18 months in rehabilitative alimony is inadequate. The purpose of rehabilitative alimony is to assist the recipient in improving her condition "without becoming destitute in the interim." Hubbard v. Hubbard, 656 So.2d 124, 130 *767 (Miss.1995). Rehabilitative periodic alimony "is not intended as an equalizer between the parties" nor is it meant to put the recipient in a position equivalent to that enjoyed before the divorce. Id. at 130. Rather, achieving the latter goal is more properly the purpose of permanent alimony. See generally Jenkins v. Jenkins, 278 So.2d 446, 449-50 (Miss.1973).
¶ 15. The chancellor's award of 18 months of alimony equals a total of $13,500. Mrs. Driste's argument that this is too little again should not be evaluated just by looking at the one award, but at all. For the second and last time, we delay determining the adequacy of an award until we consider all of the chancellor's decree. The final issue is lump sum alimony.

ISSUE 3: Inadequate lump sum alimony
¶ 16. Mrs. Driste disputes the amount awarded as lump sum alimony. Unlike rehabilitative periodic alimony, the purpose of lump sum alimony is to serve "as an equalizer between the parties to serve equity amongst them completely once and for all." Hubbard, 656 So.2d at 130. Mrs. Driste asserts that $20,000 was grossly inadequate and that the appropriate amount is not less than $96,652. The chancellor applied the correct factors for determining lump sum alimony. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). Only four are enumerated: 1) substantial contribution to accumulation of total wealth; 2) long marriage; 3) recipient spouse's separate estate or income is meager; and 4) no financial security without award. Id.
¶ 17. Mrs. Driste contributed to the marital estate and assisted her husband both directly and indirectly in his professional success. She gave up a relatively good job to follow Mr. Driste from Alabama to Mississippi. His increase in salary nearly off-set the financial loss of her leaving work and later surpassed it, but leaving her with no personal income. Eight years is not a particularly long marriage. The disparity of gross income, however, is large, and the chancellor made specific note of that fact. Mrs. Driste's entire income in 1996 was about $7,000 while Mr. Driste had a salary of over $96,000. His gross monthly income was $7,875.01 and net income was $4,756.65. Monthly expenses were said to be about $4,000, including the $1,227 house note that would end as soon as the sale occurred. An open market sale was to be attempted for six months, then an auction if that failed. Furthermore, Mr. Driste was to pay $750 per month in rehabilitative alimony for eighteen months. Moreover, Mrs. Driste was only working part time and at a low hourly rate compared to her previous employment. Her financial security appears uncertain given this award even if she does achieve full time employment.
¶ 18. It was anticipated under the decree that the house would be sold within six months and the rehabilitative alimony would be paid in 18 months. Lump sum payments would end after approximately 22 months. Without the payments from her ex-husband, Mrs. Driste's gross pay averages only $516 per month with a net pay of only $421.93. Her monthly expenses were about $2,600. Unless she indeed has returned fully to the workplace in 22 months, after the support from Mr. Driste ends, she would have a starting deficit of over $2,000 per month. It is significant that the $750 monthly rehabilitative alimony is not relevant to determining whether a supported spouse can maintain an equivalent standard of living to that before the divorce. It is only to help defray the expenses of the spouse in re-entering employment, including re-educating herself. Even while the rehabilitative alimony was being paid, there was a monthly shortfall to expenses of over $1,000. Using the $20,000 award of lump sum alimony to offset this shortfall would exhaust the money in less than fourteen months. Full time employment would no doubt help with this problem but the significant *768 shortfall in Mrs. Driste's needs is obvious.
¶ 19. Applying the Armstrong factors for determining alimony, we are especially concerned about the great disparity in income and earning capacity of the parties, the standard of living and resulting expenses that Mrs. Driste had acquired, and the general equity owed to both parties in a divorce. Armstrong, 618 So.2d at 1280. Considering all these factors, the chancellor's award of $20,000 in lump sum alimony, $750 for 18 months in rehabilitative alimony, and no periodic alimony is grossly inadequate. Jeanne Driste's total alimony award comes to only $33,500, paid over 22 months. During that period Mr. Driste is projected to have earned a gross income of close to $200,000. That income will continue well past 22 months, while the contribution to Mrs. Driste ends. The total of $33,500 in payments is the equivalent of providing only $750 per month (the rehabilitative award that ends in 18 months) for less than four years, a period during which Mr. Driste would have earned close to $400,000. We find this inadequate substitution for meaningful support of Mrs. Driste and reverse all the alimony determinations for further proceedings.

ISSUE 4: Equitable distribution
¶ 20. Mr. Driste had a 401K worth $30,626.12, several hundred dollars' worth of bank stock, twenty $100 United States Savings Bonds, and stock options that, if exercised, could bring in over $25,000. The chancellor determined that the 401K was marital property and subject to equitable distribution while the stock option was factored into making the lump sum alimony award. Everything else was divided almost evenly in value. Mrs. Driste received property that she valued at $25,655 while Mr. Driste received property he valued at $24,300.
¶ 21. On appeal, Mrs. Driste maintains she should receive the great majority of assets due to her greater need. She also claims the chancellor again erred in not allowing evidence of fault on the part of Michael Driste to be given. Among the factors for equitable division of marital property is each spouse's contribution to the harmony and stability of the marriage. Ferguson v. Ferguson, 639 So.2d 921, 928 (1994).
¶ 22. We again find error with the chancellor's rejection of testimony regarding fault. The chancellor found "there [was] no real issue as to the contribution to the stability and harmony of the marital and family relationship." The chancellor's understandable focus on the fact that this was a no-fault divorce cannot avoid the need for the court to consider all the Ferguson factors, some of which implicate fault. As for alimony, we acknowledge the chancellor's discretion to limit the amount of evidence admissible on fault once an agreement for an irreconcilable differences divorce has been entered. A total rejection of evidence regarding contributions to the harmony and stability of the marriage is nonetheless too absolute. Whether Mr. Driste committed adultery that ultimately caused the break-up of the marriage was relevant for equitable distribution.
¶ 23. We reverse the decisions regarding equitable division of property. The overall mixture of property distribution and alimony needs to be recalculated by the chancellor, pursuant to such proceedings as he deems appropriate.
¶ 24. THE JUDGMENT OF THE ACORN COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COST OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.
THOMAS, P.J., NOT PARTICIPATING.