995 So.2d 743 (2007)
Richard Broderick JONES, Appellant
v.
Nevada Rae Barr JONES, Appellee.
No. 2006-CA-00974-COA.
Court of Appeals of Mississippi.
December 11, 2007.
Rehearing Denied March 11, 2008.
*745 Mark A. Chinn, Jackson, William Matthew Thompson, attorneys for appellant.
Michael J. Malouf, Melissa Ann Malouf, Jackson, attorneys for appellee.
EN BANC.
ISHEE, J., for the Court.
¶ 1. Nevada Rae Barr Jones and Richard Broderick Jones agreed to a divorce based on irreconcilable differences and submitted the remaining disputed issues to the Chancery Court of Hinds County for determination. The court entered a final judgment of divorce on January 25, 2006, ordering the parties divorced on the grounds of irreconcilable differences and equitably distributing the marital assets. Aggrieved by the division of the marital assets, Richard appeals and asserts the following issues:
(1) It was error to deny the motion to strike and to deny sanctions because of perjury, discovery violations, and destruction of evidence.
(2) It was error to rely on perjury and destruction of evidence.
(3) The court committed manifest error in equitable distribution by (a) failing to consider Richard's contributions to Nevada's writing, (b) failing to consider Richard's contributions to the marriage, and (c) not awarding future interest from Nevada's books.
(4) It was error to refuse to award alimony.
(5) It was error to refuse to award attorney's fees due to perjury and discovery violations.
Finding no error, we affirm.

FACTS
¶ 2. Nevada Rae Barr and Richard Jones were married on June 29, 1996. After difficult times and some periods of separation, Nevada filed for divorce from Richard on December 23, 2004. She cited cruel and inhuman treatment and irreconcilable differences as grounds for the divorce. In response, Richard filed a counterclaim seeking a divorce on the grounds of adultery or, in the alternative, irreconcilable differences.
¶ 3. Later, Nevada and Richard agreed to drop their fault-based claims for divorce, and they filed a joint motion for divorce based on irreconcilable differences. The parties agreed to have the chancery court decide the issues upon which they could not agree. They listed the following as disputed issues: property rights, alimony, equitable distribution, valuation of assets, debts, distribution of real and personal property, taxes, attorney's fees, determination of marital waste, legal interest on any court judgments, and any and all financial issues.
¶ 4. The trial lasted two days and was a heated affair, with each party filing motions for sanctions against the other alleging perjury and discovery abuses. The *746 couple had been married for approximately eight years, with periods of separation during the relationship, the last separation being in November 2004, about a month prior to Nevada's filing for divorce. It came out during discovery that Nevada had begun a new relationship with Don Paxton in November, and Richard had begun to move on when he began a relationship with Charlotte Carlton, whom he met on the dating website, Match.com.
¶ 5. At the conclusion of the trial, the chancellor entered an order granting Nevada and Richard an irreconcilable differences divorce and equitably dividing the marital assets and debts. Richard was awarded the marital home in Clinton, Mississippi, the home he purchased in West Virginia for his son, the three automobiles in his possession, a motorcycle, the yard equipment, various accounts in Nevada's name and some in his name, and the cash that Nevada had left in their joint account. Nevada received the New Orleans home, her three automobiles, a pair of scooters, a brokerage account in her name, and future income from her books.

STANDARD OF REVIEW
¶ 6. The scope of review in a domestic relations case is limited by the substantial evidence/manifest error rule. Mizell v. Mizell, 708 So.2d 55, 59(¶ 12) (Miss. 1998). We will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id. at 59(¶ 13). "This court will not substitute its judgment for that of the chancellor `even if it disagree[s] with the lower court on the finding of fact and might . . . [arrive] at a different conclusion.'" Owen v. Owen, 798 So.2d 394, 397-98(¶ 10) (Miss.2001) (quoting Richardson v. Riley, 355 So.2d 667, 668 (Miss. 1978)).

ISSUES AND ANALYSIS

I. Motions to strike and for sanctions
¶ 7. In Richard's first point of error, he alleges that the chancery court erred in denying his motions to strike and for sanctions against Nevada.
¶ 8. Rule 37(b) of the Mississippi Rules of Civil Procedure prescribes the sanctions a trial court may impose for discovery violations. Rule 37(e) further provides that the court may impose "such sanctions as may be just."
¶ 9. The decision whether to impose sanctions on a party for discovery abuses is within the discretion of the trial court. Amiker v. Drugs for Less, Inc., 796 So.2d 942, 948(¶ 24) (Miss.2000). "The provisions for imposing sanctions are designed to give the court great latitude." Id. We follow an abuse of discretion standard of review for a trial court's decision whether to award sanctions for discovery abuses. Hayes v. Entergy Miss., Inc., 871 So.2d 743, 747(¶ 11) (Miss.2004).
¶ 10. In his two motions to strike and for sanctions, Richard asked the court to strike any reference by Nevada concerning allegations of fault against him, to presume Nevada was the author of the "Dear John" letter left to him, and to award him attorney's fees, costs, and expenses.
¶ 11. First, since the parties had agreed to an irreconcilable differences divorce over two months before the first of these motions was filed, they had already agreed to drop any allegations of fault. While Richard may have sought this relief because he was concerned with the truth of Nevada's testimony after she initially gave an incorrect date as to when she began a relationship with Don, it is nevertheless the chancellor's duty to evaluate her credibility as a witness. Simmons v. *747 Jaggers, 914 So.2d 693, 698(¶ 20) (Miss. 2005). Furthermore, the chancellor may not have issued an order limiting Nevada's testimony, but many times throughout the case he did sustain objections to testimony she offered because it possibly crossed the line into proof of fault.
¶ 12. Second, in regard to authoring the letter left to Richard, Nevada admitted that she typed it on her computer. While she also admitted that she destroyed the computer, she claimed this was done prior to receiving a request to turn over the computer to prove that she wrote the letter. As she readily admitted that she typed the letter, this issue was moot.
¶ 13. Richard also claims he should be awarded attorney's fees, costs, and expenses that he expended to pursue sanctions. However, the relief sought by Richard in his motions, as discussed, was either irrelevant in an irreconcilable differences divorce or moot. Accordingly, we do not find the chancellor abused his discretion in failing to grant the relief sought by Richard. This was a very heated trial, and each party filed for sanctions and alleged perjury against the other throughout the proceeding. While Nevada admittedly committed perjury during her deposition and destroyed her computer, she also filed a motion for sanctions against Richard alleging that he too committed perjury. Given the facts of this case, it would have been advisable for the chancellor to recommend an investigation into each parties' allegations of perjury by the district attorney. Furthermore, faced with such misconduct from both parties, it was within the chancellor's discretion to refuse to award sanctions. Therefore, this issue is without merit.

II. Reliance on perjury and destruction of evidence
¶ 14. As we stated above, it is the chancellor's duty to evaluate the credibility of a witness. Simmons, 914 So.2d at 698(¶ 20). Therefore, it was the chancellor's duty to consider the veracity of Nevada's testimony, and we do not find that he erroneously relied on either her statements about her extramarital relationship or the destruction of her computer as Richard alleges. He was mindful of the fact that Nevada lied about Don during her deposition, as evidenced in his order when he stated, "The Court is well aware that Nevada does not come to the Court with clean hands. . . ." Furthermore, the destruction of her computer was irrelevant since Richard wanted the computer to prove that Nevada wrote the "Dear John" letter, which she admitted writing. This issue is without merit.

III. Equitable distribution
¶ 15. Richard next argues that the chancellor erred in his equitable division of the marital assets. According to Richard, the division was one-sided and unfair, and the chancellor did not adequately consider Richard's contributions to the marriage. He also briefly alleges that gender played a role in the chancellor's decision, and that, ultimately, he should receive an equal share of the marital property.
¶ 16. The supreme court has established a list of guidelines for chancellors to consider when dividing marital property. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The chancery court must evaluate the equitable division under certain factors and make findings of fact on each to assist in appellate review. Id. In the present case, the chancellor made the following findings under Ferguson:

(1) Substantial contribution to the accumulation of property

a. Economic contribution
¶ 17. Nevada earned approximately ninety-six percent of the income during the *748 marriage. Richard was fired from his job and did not find another, which caused tension in the marriage. Richard made some improvements to the house and cooked the meals for a time, but the chancellor found his contributions to be very limited.

b. Contribution to the stability of the marriage
¶ 18. Neither party made substantial contributions to the stability of the marriage. The parties had separated from 1997 to 1998 and again in November 2004. Richard had an addiction to pornography and exchanged explicit e-mails with other women, and Nevada began a relationship with another man just before her and Richard's final separation.

c. Contribution to education training, or other accomplishment
¶ 19. The court noted that there was nothing in the record concerning contributions to education or training and that Richard's contributions to Nevada's career were minimal.

(2) Degree to which spouses disposed of assets and prior distributions of assets
¶ 20. Richard spent approximately $49,000 to help one of his children from another marriage start a business in Norway. He also paid for three years of out-of-state tuition at the University of Washington and later the University of Wyoming for another child who was still seeking an undergraduate degree at twenty-five years of age.
¶ 21. Richard spent significant amounts on travel, entertainment, and personal pursuits while Nevada a considerable amount less. After he and Nevada separated, Richard also bought a new Honda convertible, a house in West Virginia for his son, and accumulated at least $70,000 in credit card debt.

(3) Market and emotional value of the assets subject to distribution
¶ 22. Each party had more emotional attachment to their respective homes, in which they lived at the time of trial. Also, Richard was more attached to the West Virginia home, and Nevada had more of an attachment to her books.

(4) Value of assets not subject to distribution
¶ 23. Nevada received $691,000 during the marriage for books written prior to the marriage, which she used as marital funds.
¶ 24. Nevada gave Richard $8,000 to pay off debts prior to the marriage, for which he conveyed a one-half interest in his residence. The sale of that home yielded net equity of approximately $8,000, which the parties put toward the marital home along with $20,000 of Nevada's personal funds.

(5) Tax and economic consequences and consequences to third parties
¶ 25. Nevada must refund a $360,000 advance payment to Random House if she does not submit a satisfactory manuscript for a book she was writing.

(6) The extent to which distribution can eliminate the need for alimony
¶ 26. Proper division would eliminate the need for alimony and avoid future friction between the parties.

(7) Needs of the parties for financial security
¶ 27. Nevada had no pension and will lose Richard's insurance. She has substantial earning capacity for her future books.
*749 ¶ 28. Richard was fifty-five and in good health. He had a bachelor's degree in business and finance, many skills, and a federal employee rating of GS11. He had life insurance and an annual pension of $15,000 for life. At separation he was debt free, had a house, three cars, $56,000 in cash, and over $26,000 in IRAs. He had a capacity to earn additional income, but chose not to work during the marriage and has not worked since separation.

(8) Other factors that should be considered
¶ 29. The chancellor noted that he observed the witnesses and considered this property division to meet the goals of distribution. He found that an equal division was neither necessary nor equitable since Richard contributed very little and spent in excess. While he was aware that Nevada did not come to court with clean hands, he found that the division, nevertheless, should significantly favor her.
¶ 30. While Richard finds error in the chancellor's decision to award Nevada a substantially larger portion of the marital estate, the rule is that there is no right to an equal distribution of marital property. Ferguson, 639 So.2d at 927. The division is left to the discretion of the chancery court. Id. "In making an equitable distribution of marital property . . . the chancellor is not required to divide the property equally." Bullock v. Bullock, 699 So.2d 1205, 1210-11(¶ 24) (Miss.1997).
¶ 31. Similarly one-sided property divisions have been upheld as equitable. This Court upheld an award of two-thirds of the marital property to the husband and noted that the wife who stayed at home should receive an equitable portion. Weeks v. Weeks, 832 So.2d 583, 586 (¶¶ 11, 13) (Miss. Ct.App.2002).

IV. Alimony
¶ 32. Richard also claims that he is entitled to alimony payments from Nevada. He bases this on the fact that he was "approaching retirement age and had not worked in years," while Nevada was "in full bloom as a writer and was earning almost a million dollars per year." He claims that lack of alimony will place him in financial jeopardy, and that he was a victim of gender discrimination when the chancellor refused to award alimony.
¶ 33. The decision whether to award alimony is within the discretion of the chancellor and will not be reversed absent manifest error or an abuse of discretion. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). "In the case of claimed inadequacy or outright denial of alimony, we will interfere only where the decision is so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Id.
¶ 34. The law on alimony, as Richard correctly points out, is that the chancellor needs to do no more "if there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties. . . ." Knutson v. Knutson, 704 So.2d 1331, 1334(¶ 16) (Miss.1997). "Alimony should be considered only `if the situation is such that an equitable division of marital property, considered with each party's non[-]marital assets, leaves a deficit for one party.'" Id. (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)).
¶ 35. Nothing in the record shows that Richard will have "a deficit" without any alimony payments. Furthermore, he still had not resumed working at the time of the trial, and has made little or no effort to help himself. In finding that an alimony *750 award was not warranted, the chancellor stated the following:
The Court has reviewed this matter and finds that after distribution both parties will possess a debt free home, multiple automobiles, and sufficient funds to more than adequately provide for both parties. Both parties are capable of pursuing employment and this Court will not burden Nevada with alimony for the mere purpose of allowing Richard to continue his life of leisure.
Ultimately, the chancellor found that it was in the parties' best interest to avoid future payments and awarded them sufficient assets from the distribution of marital property. We, therefore, find that the chancellor did not abuse his discretion in denying alimony payments to Richard. This issue is without merit.

V. Attorney's fees
¶ 36. Lastly, Richard argues that he should be awarded attorney's fees. He cites inability to pay and Nevada's wrongdoings as entitling him to receive attorney's fees.
¶ 37. Generally, whether to award attorney's fees in a divorce case is left to the discretion of the trial court. Cheatham v. Cheatham, 537 So.2d 435, 440 (Miss.1988). However, there is some guidance on the issue. An award of attorney's fees is not appropriate when a party is able to pay. Brooks v. Brooks, 652 So.2d 1113, 1120 (Miss.1995). If the record does not reflect that a party is unable to pay attorney's fees, it is an abuse of discretion for the trial court to award them. Voda v. Voda, 731 So.2d 1152, 1157(¶ 29) (Miss. 1999).
¶ 38. The chancellor found that neither party had proven an inability to pay attorney's fees. Based on such a determination by the chancellor, to award attorney's fees to Richard would have constituted an abuse of discretion. Id. Since Cheatham places the discretion to make such an award in the hands of the trial court and the court found that both parties were able to pay, we ask only whether the chancellor abused his discretion by refusing to award attorney's fees. As nothing in the record indicates the parties were unable to pay, the chancellor's ruling was proper.
¶ 39. We discussed whether Nevada's misconduct was a basis for awarding attorney's fees in Richard's first point of error, so we will not do so again. This issue is without merit.
¶ 40. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER AND CARLTON, JJ., CONCUR. BARNES, J., CONCURS AS TO ISSUES III AND IV AND DISSENTS AS TO ISSUES I, II AND V. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. BARNES, J., JOINS ISSUES I AND II. IRVING, J., NOT PARTICIPATING.
GRIFFIS, J., DISSENTING:
¶ 41. I respectfully dissent. I would reverse and remand for further proceedings.

I. Motions to strike and for sanctions
¶ 42. I am of the opinion that the chancellor erred in not granting the motion for sanctions and for failing to take any action to punish Nevada Rae Barr Jones for her admitted perjury, discovery violations and intentional destruction of evidence. The chancellor recognized the perjury and need for sanctions when he held, "[a]dmittedly *751 by the witness [Nevada], there's been a tremendous amount of perjury committed in this case, over and over again. . . . I think that it's certainly subject to sanctions because of that. I mean sanctions is the least of it, really for this kind of perjury, but I'm going to declare that she has committed perjury and is going to be sanctioned, and I'll take it under advisement as to what the sanction will be." At the conclusion of the trial, without explanation, the chancellor denied the requests for relief and gave no reason for this change of opinion.
¶ 43. Richard's counsel established that Nevada lied under oath during her March 8, 2005, deposition. She testified that she had not committed sexual intercourse with anyone other than her husband during their marriage. On three occasions, Nevada denied a relationship with another man. Eventually, she admitted that this was a lie and that she lied under oath to better her position in the divorce proceeding. She eventually testified, "That was a big, fat lie." Her justification for lying was that she was intimidated by Richard's counsel. Nevada did not correct or amend those statements under Rule 26(f)(2)(A) of the Mississippi Rules of Civil Procedure.
¶ 44. Unfortunately, some would argue that it is a divorce case so everyone is expected to lie. This Court cannot accept such conclusion or wink at perjury because of the type of case. Neither should the chancellor have failed to sanction this act of perjury. I find the chancellor in error for failing to impose meaningful sanctions on Nevada for her perjury. I am of the opinion that the chancellor should have, at a minimum, determined the amount of Richard's attorney's fees and expenses that were necessitated by Nevada's perjury and assessed sanctions, at least, in that amount.

II. Reliance on perjury and destruction of evidence
¶ 45. Nevada admitted that she intentionally destroyed her personal computer after the content, i.e., the electronic files, became an issue in this case. At her deposition, she disputed her authorship of a "Dear John" letter that was allegedly left for Richard when Nevada left and separated from him. When asked if she was the author, Nevada testified, "I don't know that I wrote it at all." Later she testified that she did not remember if she left the letter or not. Then, Nevada testified that it would have been typed on her computer.
¶ 46. Seven days later, Richard propounded a request for production that sought the computer. A short time later, Nevada filed her response to the request for production and objected because "it is overly broad and outside the scope of discovery." Clearly, this response was without basis or justification. Five months later, she admitted that "Plaintiff no longer has a computer inasmuch as her computer was destroyed by her prior to Defendant's request." At the hearing, Nevada testified "I took a cold chisel and a hatchet; I tore it apart; I then took all of the pieces that were inside it and I put them in a metal box; I burned it by pouring gasoline over it, and I shoveled it into a plastic bag and dumped it in a bayou." Such was an excellent description for an author as able a craftsman as Nevada.
¶ 47. Nonetheless, Nevada's actions intentionally interfered with justice. "A trial is a proceeding designed to be a search for the truth." Sims v. ANR Freight Sys., Inc., 77 F.3d 846, 849 (5th Cir.1996). "When a party attempts to thwart such a search, the courts are obligated to ensure that such efforts are not only cut short, but that the penalty will be sufficiently severe to dissuade others from following *752 suit." Scoggins v. Ellzey Beverages, Inc., 743 So.2d 990, 994-95(¶ 18) (Miss.1999). Rules 37(b)(2)(C) and (e) of the Mississippi Rules of Civil Procedure provide that the trial courts may, in appropriate cases, impose the sanction of "dismissing the action or proceeding or any part thereof" for abusing the discovery process. Additionally, "[t]he power to dismiss is inherent in any court of law or equity, being a means necessary to orderly expedition of justice and the court's control of its own docket." Pierce v. Heritage Properties, Inc., 688 So.2d 1385, 1388 (Miss.1997) (citing Palmer v. Biloxi Reg. Med. Ctr., 564 So.2d 1346, 1367 (Miss.1990)).
¶ 48. The Mississippi Supreme Court adopted the position of the United States Court of Appeals for the Fifth Circuit for evaluating the appropriateness of dismissal as a sanction for discovery violations. Pierce, 688 So.2d at 1389 (adopting analysis outlined in Batson v. Neal Spelce Assoc., 765 F.2d 511, 514 (5th Cir.1985)), the Fifth Circuit outlined four factors to be considered when examining a request to dismiss as a sanction:
First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Next, dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may not be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.
Batson, 765 F.2d at 514 (citations omitted).
¶ 49. Here, dismissal would not be an appropriate sanction because the parties agreed to an irreconcilable divorce. Likewise, because the perjury, discovery violations and destruction of evidence were discovered before the chancellor decided the issues, we cannot say that Richard's ultimate defense was substantially prejudiced. However, we can and should conclude that Nevada's perjury, discovery violations and destruction of evidence should not go unpunished. I would remand for the chancellor to consider the appropriate award of sanctions that would be substantial enough to be considered a deterrent for future domestic litigants who might consider similar conduct.
¶ 50. As part of this issue, I also believe that this Court should address Richard's request that "this Court forward the evidence of Nevada's perjury and destruction of evidence to the appropriate law enforcement authorities for prosecution, as well as the Mississippi Bar Association." Richard's counsel, having determined that it is necessary for the conduct to be reported, should be required to take such action and report to the Court that such referral has been made. It should not be the burden of this Court to take the action that Richard's counsel has recognized is necessary and appropriate under our criminal laws and Rules of Professional Conduct.

III. Equitable Distribution
¶ 51. I also find that the chancellor committed manifest error in his consideration of equitable distribution. The chancellor concluded that there was $2,884,615 in marital assets, and $150,500 in marital liabilities. The chancellor also determined that there were eleven books written during the marriage. However, the chancellor's opinion does not state what part of the investment accounts and future income on books were to be considered marital or non-marital property. Clearly, almost all of these funds were accumulated during the marriage or from efforts that occurred *753 during the marriage. As such, these funds should be considered marital property. The future income on books was not considered as marital property and was not included in the equitable division of property without explanation as to why it was not. Mississippi law requires that "all marital assets must be considered to reach an equitable division of those assets." Hopkins v. Hopkins, 703 So.2d 849, 850(¶ 7) (Miss.1997).
¶ 52. Under Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994), Mississippi law recognizes a presumption that domestic contributions are as valuable as the primary wage earner's contributions. There was evidence of Richard's domestic contributions that should have been given consideration. Richard did much work around their home and participated in the duties that were required of a writer of Nevada's stature and fame. During their marriage, Nevada's annual income increased from $32,791 to $991,987 at the time of their separation. Nevada's two most successful books, Blood Lure and Hunting Season, were written during the marriage. Richard's indirect economic, i.e., domestic contributions, his contributions to the stability and harmony of the marriage and his contributions to the earning-power of the spouse accumulating the assets were sufficient to be recognized and awarded a more equitable distribution.

IV. Alimony
¶ 53. Finally, Richard argues that he should have been entitled to alimony. In Knutson v. Knutson, 704 So.2d 1331, 1334(¶ 16) (Miss.1997), the supreme court held:
In Ferguson, the Court explained that "all property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together." Ferguson v. Ferguson, 639 So.2d 921 at 929. "If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need be done." Johnson, 650 So.2d at 1287. Alimony should be considered only "if the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party." Id.

In Driste v. Driste, 738 So.2d 763, 768(¶ 19) (Miss.Ct.App.1998), the chancellor awarded the wife of an eight year marriage, with no children, rehabilitative alimony of $750 per month for eighteen months, lump sum alimony of $20,000, nearly $5,000 in attorney fees, one-third of the tax refund, and almost an even division of the remaining property. This Court reversed and remanded the chancellor's award and held the overall alimony award was inadequate. The husband, at the time of the divorce, was making $96,000 per year and the wife was working part-time. The husband's earning capacity greatly exceeded the wife's earning capacity. The Court determined that "[e]ight years is not a particularly long marriage. The disparity of gross income, however, is large, and the chancellor made specific note of that fact." Id. at 767(¶ 17). The Court then reasoned:
Applying the Armstrong factors for determining alimony, we are especially concerned about the great disparity in income and earning capacity of the parties, the standard of living and resulting expenses that Mrs. Driste had acquired, and the general equity owed to both parties in a divorce. Armstrong, 618 So.2d at 1280. Considering all these factors, the chancellor's award of $ 20,000 in lump sum alimony, $ 750 for 18 months in rehabilitative alimony, and no periodic alimony is grossly inadequate. Jeanne Driste's total alimony award comes to only $ 33,500, paid over 22 months. During that period Mr. Driste *754 is projected to have earned a gross income of close to $ 200,000. That income will continue well past 22 months, while the contribution to Mrs. Driste ends. The total of $ 33,500 in payments is the equivalent of providing only $ 750 per month (the rehabilitative award that ends in 18 months) for less than four years, a period during which Mr. Driste would have earned close to $ 400,000. We find this inadequate substitution for meaningful support of Mrs. Driste and reverse all the alimony determinations for further proceedings.
Driste, 738 So.2d at 768(¶ 19).
¶ 54. For these reasons, I dissent from the majority's decision and I would reverse the chancellor's decision to not grant sanctions and the determination regarding equitable division of property. In my opinion, the considerations of property distribution, alimony and attorney's fees needs to be recalculated by the chancellor, pursuant to such proceedings as he deems appropriate.
ROBERTS, J., JOINS. BARNES, J., JOINS IN ISSUES I AND II.